IN RE LOVE'S ESTATE.

(*Nashville,* December Term, 1940.)

Opinion filed December 21, 1940.

Thos. H. Peebles, of Columbia, for Love.

Pride Tomlinson, of Columbia, for Taylor and others.

Mr. Justice McKinney delivered the opinion of the Court.

By their petition certain distributees of the estate of W. D. E. Love seek to hold his administrator, J. R. N. Love, liable on a note which he executed to his intestate on December 25, 1932, for $932.98. The circuit court and the Court of Appeals have concurred in absolving the administrator from liability, and petitioners have brought the case to this court by petition for writ of *certiorari*.

W. D. E. Love died intestate, never having married, survived by two brothers, J. R. N. Love and L. D. Love, and petitioners, who are nieces and nephews, and who together take five-sevenths of the distributable estate. L. D. Love has since died.

J. R. N. Love and L. D. Love qualified as administrators early in July, 1935. The note in question was in the possession of the intestate at the time of his death. Shortly before he died it is conclusively shown that he executed and delivered the following paper writing:

"This is to show that if J. R. N. Love was living at my death that this note dated Dec. 25, 1932 which is given for borrowed money from me will not have to be paid by him.

"W. D. E. Love

"Witness—Ross Love"

There is no insistence that this debt was not actually forgiven, but it is insisted that by virtue of having an order entered making said note a part of the inventory that this was, in effect, an adjudication of the liability of J. R. N. Love, and that he is therefore, estopped to claim that this note was a gift.

Upon the advice of counsel this note was not included in the original inventory filed on August 3, 1935, nor in the supplemental inventory filed on August 31, 1935.

On February 6, 1936, the nieces and nephews of deceased filed their petition in the county court, by which they sought to charge the administrators with said note.

It should be further stated that deceased, shortly before his death, held a note for $1,000 against his other brother, L. D. Love, which he delivered to him as a gift.

Manifestly the deceased intended that his two brothers, to the extent of these gifts, should receive a larger portion of his estate than his nieces and nephews, children of deceased brothers and sisters.

The administrators filed an answer to said petition on August 14, 1936, denying liability on said note and stating: "Your administrators frankly admit that at one time J. R. N. Love was indebted to W. D. E. Love in substantially the amount alleged in said petition, but J. R. N. Love asserts that W. D. E. Love gave him this note, both orally and in writing and this J. R. N. Love will be ready to prove upon a hearing in this cause."

Upon the hearing J. R. N. Love did establish the gift of

this note, and the controversy would be at an end but for the following entry made on the minutes of the county court on September 21, 1937:

"In Re: Estate of W. D. E. Love, deceased.

"In the County Court of Maury County.

"In this cause come L. D. Love and J. R. N. Love, Administrators of the estate of W. D. E. Love, deceased, and move the Court to be allowed to amend their inventory, heretofore filed in the cause, by adding the following item thereto, to-wit: (The note for $932.98 is then copied in full.) And said motion being heard and understood by the Court, it is accordingly ordered and said item is hereby added to said inventory."

The administrators submitted their account on January 25, 1938, in which the following entry appears on the credit side:

"J. R. N. Love and Lillie Love—'gift' $932.98."

It is the theory of the administrators that in having the foregoing order entered it was not their purpose or intention to admit liability on said note, but simply to list it as a *prima facie* asset subject to their defense of a gift as specifically averred in their answer, and the circuit court and the Court of Appeals have concurred in accepting this theory. As a matter of fact, there is nothing in the record, other than the above order, indicating that the administrators at any time intended to admit liability on this note. We agree with the Court of Appeals in holding that since the note was *prima facie* an asset of the estate the administrators should have listed it in the inventory, followed immediately by a statement of the claim of a gift by deceased to J. R. N. Love individually; and considering the proceedings as a whole, that, in practical effect, is what was done. The administrators were simply attempting to perform their

duty by listing this note as a *prima facie* asset, but with no intention of admitting that it was, in fact, a liability against them.

In *Snodgrass* v. *Snodgrass,* 60 Tenn. (1 Baxt.), 157, 162, it is said: "As against the administrator, the inventory furnished and made out and sworn to by him is conclusive to charge him, unless he can show that he was mistaken in the facts upon which he admitted his liability."

The foregoing is a correct statement of the law, and since that was a bill in chancery the court possessed inherent jurisdiction to grant relief on the ground of mistake.

We quote from the opinion in *Little* v. *Cook,* 78 Tenn. (10 Lea), 715, 716, as follows:

"This bill is filed by the children and grandchildren of Rebecca Little, formerly Rebecca Cook, to recover of A. C. Cook, as administrator, their share of the estate of Jacob Cook, deceased.

"Complainant in his argument rests his case entirely on the inventory of the administrator, and settlement, in which the administrator charged himself with notes given for certain negroes sold by him, amounting to upwards of $4,500. It is thought the case of *Snodgrass* v. *Snodgrass, Administrator,* 60 Tenn. (1 Baxt.), [157], 158, is conclusive of this question. In that case the administrator was held personally to account for moneys received by him, though not properly included in his administration account. His sureties were held, however, exempt in that case.

"It was said in that case, that his inventory was conclusive to charge him, unless he can show he was mistaken in the facts upon which he had charged himself.

The result in that case was the justice of the case, as he had the money in his hands.

"But in this case no money has come into the hands of the administrator—he charges himself with these notes for negroes sold by him, and the record clearly shows his sale was without authority, conveyed no title to the slaves, and he could never have collected the notes by law. To hold that these facts do not entitle him to show himself discharged from the price of the negroes, as evidenced by the notes, and make him responsible for these notes, would be a mockery of justice, and be the opposite of the real principle underlying the case referred to."

In the two cases just quoted from bills were filed in the chancery court by distributees to hold the administrators liable for items with which they had charged themselves both in their inventories and settlements in the county court, and the question was whether such inventories and settlements were conclusive, which the court answered in the negative, as did this court in the later case of *Henshaw* v. *Gunter*, 169 Tenn., 305, 87 S. W. (2d), 561.

Where an administrator purposely charges himself with a note in his inventory and in his settlement he is conclusively bound thereby, unless he can show that he was mistaken in the facts upon which he admitted liability. In the case under consideration the administrators not only did not admit liability, but from the beginning, both orally and in the answer to the petition, as well as in the accounting with the clerk of the county court, denied liability. We think the finding of the circuit court and the Court of Appeals upon this question is fully sustained by the record, and that the petitioners were not misled and were not prejudiced by the irregular proceeding herein. The order in the county court amend-

ing the inventory, so as to include this note in the circumstances heretofore stated, was not a judicial determination that the note was an asset of the estate so as to make the plea of *res adjudicata* available to petitioners in the circuit court.

We are further of the opinion that the administrators in inventorying the note in the circumstances stated herein did not estop themselves to establish the fact that deceased gave this note to his brother, J. R. N. Love.

It is finally urged by counsel for petitioners that the administrators having listed said note as an asset of the estate that the county court and the circuit court were without jurisdiction to relieve them of their mistake; and in support of this contention cite *Henshaw* v. *Gunter, supra,* insisting that this court in that case, by inference, held that the county and circuit courts were without jurisdiction to grant such relief. In view of what we have heretofore said with respect to the proceedings in the county court in the instant case the amendment of the inventory was not done through mistake, but such action was in the nature of a confession and avoidance. But assuming that an administrator, through mistake, charges himself with a note, under all the authorities one of the inherent powers of a court of chancery is to grant relief in such a case, and that was exactly what was done in *Henshaw* v. *Hunter, supra.* In that case a plea was filed to the effect that the relief sought could be obtained in the pending law cause. In answer to that contention the court [169 Tenn., 305, 87 S. W. (2d), 562], speaking through Justice DeHaven, after referring to the above excerpt from *Snodgrass* v. *Snodgrass,* said:

"Complainant here, having included the notes and stock in his inventory, stood conclusively estopped from assert-

ing that they were not a part of the estate under administration. So, on final settlement in the county court, and on appeal to the circuit court, complainant was confronted with the conclusiveness of the charge against him for the value of the notes and stock.''

The substance of the holding in that case is that where the administrator includes certain notes and shares of stock in his inventory and is charged with same on final settlement in the county court that the circuit court is without jurisdiction to surcharge and falsify the account on the ground of mistake, but that relief can only be had in the chancery court. In that case the question of the jurisdiction of the county court on stating the account of an administrator to permit him to show that an item in his inventory was listed inavertently, by mistake, or through a misapprehension of the true facts, was not involved nor considered. In the present case the administrator has not invoked the jurisdiction of the circuit court for any purpose; he is simply insisting that the county court had jurisdiction to relieve him from liability on the note in question, and in this view we concur.

With respect to the power of the county court to make a full and complete accounting with an administrator, we quote the following pertinent sections of the Code relating to such jurisdiction:

10225. ''The county court has original jurisdiction in the following cases: . . .

''(4) The settlements of accounts of executors or administrators.''

10228. ''Such court is expressly vested, over all subjects enumerated in the foregoing sections, with the power and authority necessary and proper to the exercise of the jurisdiction therein conferred.''

8189. "The administrator or executor, before the next county court after entering on the administration, shall make a just, true, and perfect inventory of all the goods and chattels of the deceased, and return the same into the office of the clerk of the county court, and verify it by his oath before the clerk in vacation or in term time."

8244. "After the lapse of eighteen months from the qualification of every executor or administrator, the clerk of the county court shall take and state his accounts, and once every year thereafter till the administration is closed."

8247. "No account of any personal representative shall be taken until the clerk of the county or chancery court, taking the same, shall have served the parties interested and resident within his county, or the agent or attorney of such as reside elsewhere, with notice of taking the account at least five days before the time fixed for taking the same; and, if any of said parties do not reside in the county or have no agent in it, the clerk shall post a notice on the courthouse door ten days before the account is taken, or publish the same in a newspaper in the county."

8248. "The clerk or commissioner may, and, when it seems to him necessary, shall, examine the accounting party, upon oath, touching his receipts and disbursements."

8250. "The clerk shall charge every such accounting party with all such sums of money as he has received, or might have received by using due and reasonable diligence, and shall credit him with a reasonable compensation for his services, and with such disbursements as he supports by lawful vouchers."

8252. "Any person interested in any deceased person's estate as legatee, distributee, widow, creditor, or

otherwise, may, at any time before final settlement of such estate, show by proof that the personal representative has not returned a complete inventory; and the article or articles omitted in the inventory shall be debited to the personal representative at the value thereof, unless he can show a sufficient reason for leaving the same out of the inventory.''

8253. ''When an account has been finally settled by the county court, either party may appeal from the judgment of the court to the chancery or circuit court; and the appeal shall be brought before the chancellor or circuit judge at his first session in such county, and it shall be sufficient to take up, on said appeal, only so much of the record as will suffice to present the matter complained of in the judgment below.''

■ From the foregoing it is apparent that the county court possesses the necessary authority and has the requisite facilities to have a full and complete accounting with an administrator, making all proper charges against him, and allowing him credit for all items which it is made to appear he is entitled to.

The question we are considering, so far as we are advised, has not heretofore been directly passed upon by this court; but in *Black* v. *Black*, 134 Tenn., 517, 184 S. W., 27, the court considered section 8252 of the Code, set forth above, and held that the county court had jurisdiction to charge an administrator with items wrongfully omitted from his inventory. In that case the court referred to the other section of the Code copied herein, and rather indicated that the county court had full authority in the settlement of executor and administrator accounts.

■ If the county court has authority to examine an administrator upon oath and charge him with items

not appearing in his inventory, no good reason occurs to us as to why, in order to make a full accounting, he should not be given credit for items appearing in his inventory upon it being made to appear that such items are not properly chargeable against him.

It is the duty of the administrator to inventory all notes and accounts *prima facie* due his intestate, as well as to list all personal property that was in his possession at the time of his death. Persons whose names appear on notes may subsequently establish the fact that the notes were forged, or have been forgiven or paid; accounts may be disputed and recoveries thereon defeated, and other persons may establish superior claims or titles to personal effects possessed by the intestate at his death.

In these circumstances to require the administrator to file a bill in equity in each case in order to be relieved from liability for items erroneously or mistakenly included in the inventory would work a great hardship on all interested parties, in that it would occasion much delay and unnecessary expense in the administration of the estate, and would greatly limit, if not practically take away, the jurisdiction of our county and probate courts in settling the accounts of executors and administrators.

It is well to keep in mind that under Section 8189 of the Code an administrator is given a very short time within which to file his inventory, and if he is to be held liable for every item appearing therein unless relieved by the chancery court, then he would be very reluctant to include in his inventory items as to which a controversy might arise. We see no valid objection to the exercise of such jurisdiction by the county court, and the authorities seem to support our conclusions.

In 21 Am. Jur., Executors and Administrators, section 541, it is said:

"As a general rule, probate courts have the power to correct errors or mistakes in their decrees and to permit executors and administrators to make corrections in their accounts, even though their findings on disputed testimony have the same force and effect as a verdict of a jury. The final accounts, as well as annual or partial accountings or settlements, are subject to correction upon a proper case being made."

In 23 C. J., 1165, the same general rule is announced.

The annotator of 90 A. L. R., 134, makes this statement:

"A majority of the jurisdictions follow the rule that a court sitting in probate has jurisdiction to determine the title to property which the personal representative claims in his own right."

The petitioners herein have asked the county court to decree that the note in question is an asset of the estate, but deny to the personal representaive the privilege of showing that the note was given to him in the lifetime of his intestate. Such a position is untenable.

The disposition of this case by the circuit court and the Court of Appeals is equitable and just and meets with our approval. We, therefore, deny the writ.