IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 5, 2013 Session

**FRANCIS L. JOHNSTON, AS TRUSTEE OF THE MAE CHARLAYNE JOHNSTON REVOCABLE FAMILY TRUST v. CHARLES GLEN JOHNSTON**

**Appeal from the Chancery Court for Bradley County**
**No. 2012-CV-33     Jerri S. Bryant, Chancellor**

**No. E2013-00525-COA-R3-CV-FILED-MARCH 6, 2014**

This action involves a dispute regarding the validity of an $80,000 check written against the revocable living trust account of the decedent by the defendant, who is the decedent's nephew. Two days before the decedent's death, the defendant deposited the check into a personal savings account he held jointly with the decedent. The plaintiff, serving as trustee and as personal representative of the decedent's estate, filed a complaint seeking recovery of the $80,000. The trial court issued an *ex parte* restraining order, directing, *inter alia*, the bank where the joint account was held to transfer $80,000 to the clerk and master for safekeeping in the registry of the court. Following a bench trial, the trial court found by clear and convincing evidence that the $80,000 check at issue was a forgery and that the defendant did not have permission from the decedent to sign the check. The court directed the $80,000 to be transferred from the clerk and master to the decedent's estate account and dismissed the defendant's counterclaim for damages. The defendant appeals. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Charles Glen Johnston, Cleveland, Tennessee, Pro Se.

Sally C. Love, Cleveland, Tennessee, for the appellee, Francis L. Johnston, as Trustee of the Mae Charlayne Johnston Revocable Family Trust.

**OPINION**

I.  Factual and Procedural Background

The Decedent, Mae Charlayne Johnston ("the Decedent") died on December 11, 2011. A citizen and resident of Brevard County, Florida, the Decedent owned one home in Florida and one home in Cleveland, Tennessee. Prior to her death, the Decedent had been living in her Cleveland home until she required hospitalization in August 2011 with subsequent relocation to a nursing home. The defendant, Charles Glen Johnston ("Mr. Johnston"), had been residing with the Decedent and acting as her caregiver for approximately a year prior to her hospitalization. The Decedent's medical records demonstrated that on December 8, 2011, she was discovered on the floor in her room, apparently having fallen. The Decedent was transferred to SkyRidge Medical Center in Cleveland ("SkyRidge") later that day. The Decedent suffered cardiac arrest en route to that facility and after being resuscitated, was admitted to SkyRidge while on a ventilator and unresponsive. She died three days later.

On December 9, 2011, Mr. Johnston deposited in a savings account he held jointly with the Decedent an $80,000 check written against the Decedent's revocable living trust account, dated December 9, 2011. The instrument was signed with the Decedent's name. Mr. Johnston did not testify at trial. He maintained through pleadings and opening and closing statements at trial that although he was unable to deposit the $80,000 check until December 9, the Decedent had signed the check on December 5, 2011.

The plaintiff, Francis L. Johnston, who is also the Decedent's brother and Charles Johnston's father, resides in Florida. He opened the Decedent's estate with the Probate Division of the Brevard County, Florida Circuit Court, which issued him letters of administration and appointed him as the Successor Trustee ("Trustee") of the Decedent's revocable living trust ("Trust") on January 31, 2012.[1] The Trustee initiated this action by filing a complaint on February 9, 2012. According to the allegations filed, Mr. Johnston had forged the Decedent's signature on the $80,000 check and had taken items of personal property from the Decedent's Cleveland residence. The Trustee requested that the court order both the $80,000 returned to the Decedent's trust account and the Decedent's personal property surrendered to the Trust.

On February 21, 2012, the trial court entered an *ex parte* temporary restraining order, enjoining Mr. Johnston from accessing the $80,000 deposited in the joint account or coming about the Decedent's Cleveland residence; requiring Mr. Johnston to return to the Trust any

---

[1]For ease of reference in this opinion involving parties with the same last name, we will refer to Charles Glen Johnston as "Mr. Johnston" and Francis L. Johnston as "the Trustee."

of the Decedent's personal property in his possession; and requiring SunTrust Bank, where the joint account was located, to pay $80,000 to the trial court clerk's office for safekeeping pending further proceedings. Mr. Johnston, then represented by Attorney James Logan, filed a motion to dissolve the restraining order on March 5, 2012.

The trial court conducted an in-chambers hearing on March 7, 2012, with counsel for both parties present. The day before the hearing, the Trustee had filed a motion to allow him to testify telephonically. Mr. Johnston's counsel apparently did not object to the motion. Mr. Johnston was present at court but did not participate in the in-chambers hearing. Following the hearing, the trial court entered an order on March 9, 2012, *nunc pro tunc* to March 7, 2012, dissolving the *ex parte* restraining order and directing that (1) $80,000 continue to be held in the registry of the court by the trial court clerk and master, (2) SunTrust Bank release any accounts belonging to Mr. Johnston, (3) an inventory be conducted of the personal property located at the Decedent's Cleveland home and Mr. Johnston's storage unit, and (4) the Trustee be restrained from selling any property in which Mr. Johnston held an interest.

On March 12, 2012, Mr. Johnston, proceeding without benefit of counsel, filed a "Motion to Dissolve/Amend Order and to Dissolve Restraining Order," stating, *inter alia*, that he had never agreed to permit the $80,000 to be transferred from the SunTrust account to the registry of the court. Attorney Logan filed a response to Mr. Johnston's motion, as well as a motion requesting that he be allowed to withdraw from representation and that the court impose a lien for attorney's fees against Mr. Johnston's share of the $80,000 held by the clerk and master. Following a hearing conducted on March 22, 2012, the trial court granted Attorney Logan's motion to withdraw, imposed a $3,260 lien for attorney's fees against Mr. Johnston's share of the deposited funds, and denied Mr. Johnston's motions to vacate the orders previously entered. The trial court entered the respective order on May 15, 2012, *nunc pro tunc* to March 22, 2012.

On March 22, 2012, the Trustee filed a 'Motion to Approve Sale of Real Estate and Other Relief," for which his counsel filed a Certificate of Service on March 26, 2012, noting that she had delivered the motion to Mr. Johnston's last known address, the Decedent's Cleveland home. The Certificate of Service was filed with the trial court on March 26, 2012. Relative to the motion, on March 29, 2012, the trial court entered an order both approving the sale of the Decedent's real property located in Florida and ordering that the inventory of items held in storage by Mr. Johnston be conducted with a constable present.

Mr. Johnston subsequently filed a "Respondent's Motion to Dismiss and Provide Other Relief" with a memorandum in support of the motion on April 5, 2011. In describing the "other relief" requested, Mr. Johnston filed what he later referred to as a "cross-claim." The trial court treated the pleading as a counterclaim. *See* Tenn. R. Civ. P. 13.07 (defining

-3-

a cross-claim in relevant part as "any claim by one (1) party against a co-party"). During a hearing conducted April 13, 2012, the trial court denied Mr. Johnston's motion to dismiss. The court entered the written order denying the motion to dismiss on February 6, 2013, *nunc pro tunc* to April 13, 2012. On May 29, 2012, Mr. Johnston filed a motion to amend the order previously entered on May 15, 2012, regarding the lien for attorney's fees. The trial court, following a hearing, denied this motion in an order entered July 5, 2012.

Mr. Johnston filed several additional motions, as well as a set of interrogatories, on October 19, 2012. For the first time during the course of the instant proceedings, he incorporated the phrase, "Jury Requested," into each of his motions. The trial court considered Mr. Johnston's motions on November 8, 2012, denying all but one. The court granted Mr. Johnston's motion to obtain medical records for the Decedent specific to the period of December 7 through December 11, 2011. Following a hearing conducted on December 18, 2012, the trial court determined that Mr. Johnston's request for a jury trial was untimely pursuant to Rule 38.02 of the Tennessee Rules of Civil Procedure and denied the request. The court otherwise continued the trial to January 14, 2013, to allow Mr. Johnston sufficient time to obtain the Decedent's medical records.

Mr. Johnston filed several more motions on January 4, 2013, including a motion for jury trial and a motion for involuntary dismissal of the petition. The trial court denied Mr. Johnston's motion for trial by jury, finding it to be untimely. Following a bench trial conducted on two non-consecutive days of January 14 and 25, 2013, the trial court found by clear and convincing evidence that the $80,000 check at issue was a forgery and that no proof existed to show that the Decedent gave permission for Mr. Johnston to sign the check in her name. The court also directed that the $80,000 held by the clerk and master be deposited into the Decedent's estate account, denied the Trustee's request for return of personal property, denied Mr. Johnston's counterclaim for damages, and assessed court costs to Mr. Johnston. The trial court entered its final judgment on February 13, 2013, and an order of clarification on March 11, 2013. Mr. Johnston filed a timely notice of appeal from the final judgment.

## II. Issues Presented

Relevant to his appeal of the trial court's judgment, Mr. Johnston presents seventeen issues, which we restate as follows:

1. Whether the trial court erred by granting the Trustee an *ex parte* restraining order against Mr. Johnston.

2. Whether the trial court erred by entering an order allowing the court to hold funds from the Decedent's revocable family trust.

-4-

3.   Whether the trial court erred by failing to address the Trustee's absence during the March 7, 2012 hearing.

4.   Whether the trial court erred by declining to vacate the order directing the clerk and master to hold the $80,000 due to the Trustee's failure to post an injunction bond with the original petition for an *ex parte* restraining order.

5.   Whether the trial court erred by granting the Trustee permission to access Mr. Johnston's personal storage unit for the purpose of conducting and completing an inventory.

6.   Whether the trial court erred by entering orders drafted by the Trustee's counsel.

7.   Whether the trial court erred by determining that Mr. Johnston was properly served with notice of a motion hearing on March 29, 2012.

8.   Whether the trial court erred by dismissing Mr. Johnston's claim that the Trustee willfully misdirected Mr. Johnston's mail.

9.   Whether the trial court erred by denying issuance of subpoenas on behalf of Mr. Johnston in the absence of payment for the cost of the subpoenas.

10.  Whether the trial court erred by denying Mr. Johnston's request for a jury trial.

11.  Whether the trial court erred by denying, to the extent it did so, Mr. Johnston's motions for judicial notice.

12.  Whether the trial court erred by denying Mr. Johnston's motion for involuntary dismissal of the Trustee's petition.

13.  Whether the trial court erred by finding clear and convincing evidence that the $80,000 check written against the Decedent's revocable living trust was a forgery.

14.  Whether the trial court erred by dismissing Mr. Johnston's counterclaim for damages.

15.  Whether the trial court erred by declining to find the Trustee liable for wrongful eviction of Mr. Johnston from the Decedent's home.

16. Whether the trial court erred by granting an attorney's lien in favor of Mr. Johnston's former counsel in the amount of $3,260.00.

17. Whether the trial court erred by failing to address certain receipts issued by the clerk and master.

## III. Standard of Review

We review a non-jury case *de novo* upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We review questions of law, including those of statutory construction, *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006). Questions of construction involving the Tennessee Rules of Civil Procedure are likewise reviewed *de novo* with no presumption of correctness. *See Green v. Moore*, 101 S.W.3d 415, 418 (Tenn. 2003).

In reviewing pleadings, we "must give effect to the substance, rather than the form or terminology of a pleading." *Stewart v. Schofield*, 368 S.W.3d 457, 463 (Tenn. 2012) (citing *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 104 (Tenn. 2010)). We note also that pleadings "prepared by pro se litigants untrained in the law should be measured by less stringent standards than those applied to pleadings prepared by lawyers." *Stewart*, 368 S.W.3d at 462 (citing *Carter v. Bell*, 279 S.W.3d 560, 568 (Tenn. 2009); *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003); *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003)). Parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," but we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

## IV. *Ex Parte* Restraining Order

Mr. Johnston contends that the trial court violated his due process rights by entering the original *ex parte* temporary restraining order and directing SunTrust Bank to transfer $80,000 from Mr. Johnston's and the Decedent's joint account to the clerk and master for safekeeping. The Trustee asserts that the trial court properly granted the temporary restraining order without notice to Mr. Johnston because the Trustee's complaint showed specific facts indicating that immediate and irreparable loss would result to the Trust absent the order. *See* Tenn. R. Civ. P. 65.03. We conclude that the trial court did not err by finding sufficient basis to authorize the *ex parte* restraining order but did err by entering the *ex parte*

order without requiring the Trustee to post an injunction bond. *See id.*; Tenn. R. Civ. P. 65.05. Because the trial court subsequently dissolved the *ex parte* order and Mr. Johnston failed to prove resultant damages caused during the time period the *ex parte* restraining order was in effect, however, we find no reversible error.

## A. Basis for Extraordinary Relief

Rule 65.03 of the Tennessee Rules of Civil Procedure provides in pertinent part:

> **65.03. Restraining Order.** – (1)WHEN AUTHORIZED. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A)    specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party can be heard in opposition; and
>
> (B)    the applicant's attorney (or pro se applicant) certifies in writing efforts made to give notice and the reasons why it should not be required.
>
> . . .
>
> (5) BINDING EFFECT AND DURATION. A restraining order becomes effective and binding on the party to be restrained at the time of service or when the party is informed of the order, whichever is earlier. Every temporary restraining order granted without notice shall expire by its terms within such time after entry, not to exceed fifteen days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period, or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for the extension shall be entered of record.

*See also State ex rel. Dean v. Nelson*, 169 S.W.3d 648, 650 (Tenn. Ct. App. 2004).

After consideration of the Trustee's sworn complaint and motion, the trial court found sufficient basis to (1) restrain Mr. Johnston from coming about the Decedent's Cleveland residence; (2) order Mr. Johnston to return to the Trustee the $80,000 removed from the Trust, any of the Decedent's personal property in his possession, and the original of the Decedent's will; and (3) order SunTrust Bank to pay the $80,000 to the Bradley County Clerk and Master to be held in an interest-bearing account pending further order of the court.

The Trustee's sworn complaint averred that Mr. Johnston had removed $80,000 from the Trust, thus posing a threat of immediate and irreparable loss to the Trust and to the Decedent's Estate if the money were not returned. The sworn complaint further stated that Mr. Johnston had removed personal property belonging to the Decedent from the Decedent's residence, averring further threat of loss to the Estate. Regarding the need for an *ex parte* order without notice to Mr. Johnston, the Trustee averred that the Estate's attorney in Florida had "made written demand to [Mr. Johnston] to return the funds, personal property, and will" but that Mr. Johnston had not complied.[2]

Rules 67.01 through 67.04 of the Tennessee Rules of Civil Procedure provide for deposit of funds in pending actions with the trial court. Relevant to this action, Rules 67.02-.03 provide:

> **67.02. Court May Order Deposit or Seizure of Property. –** When it is admitted by the pleading or examination of a party that the party had in his or her possession or control any money or other thing capable of delivery which is the subject of the litigation and which is being held by the party as trustee for another party, or which belongs or is due to another party, the court may order the same to be deposited in court or delivered to such other party, with or without security, subject to further orders of the court, and the court may require the sheriff or other proper officer to take the money or property and deposit it or deliver it in accordance with the orders of the court.

> **67.03. Money Paid into Court. –** Where money is paid into court to abide the result of any legal proceeding, the judge may order it deposited in a designated state or national bank or savings and loan institution, to the credit of the court in the action or proceeding in which the money was paid. The money so deposited, with interest if any, shall be disbursed only upon the check of the clerk of the court pursuant to order of the court and in favor of the person to whom the order directs the payment to be made. Upon making a deposit in court a party shall not be liable for further interest on the sum deposited.

As this Court has explained:

> Rule 67, then, governs deposits made pending determination by the trial court of the right to the property or money. *See* Tenn. R. Civ. P. 1 (rules apply in

---

[2]Mr. Johnston provided the original of the Decedent's will to the attorney for the Decedent's Estate without incident or need for further action.

circuit and chancery courts). In that situation, Rule 67.03's initial condition that it applies only to money deposited "to abide the result of any legal proceeding" means "to wait for." *See* BLACK'S LAW DICTIONARY at 7 (6th ed. 1990).

*Vooys v. Turner*, 49 S.W.3d 318, 325-26 (Tenn. Ct. App. 2001).

The instant action presents the unusual circumstance of Rule 67.02 relief having been granted in conjunction with an *ex parte* restraining order. In this instance, the Trustee's petition was the pleading of a party admitting that he had in his possession or control money capable of delivery that was also the subject of the litigation. *See* Tenn. R. Civ. P. 67.02. Mr. Johnston deposited the $80,000 into an account he held jointly with the Decedent. Because the Trustee was also the personal representative of the Decedent's Estate, he was authorized to access information from the joint account and to investigate and gather the assets held in the Decedent's name. The Trustee's petition thus operated as the pleading needed to initiate Rule 67.02 relief. Upon our review of the pleadings, we conclude that the trial court did not violate Mr. Johnston's due process rights in finding sufficient basis, pursuant to Rules 65.03 and 67.02 of the Tennessee Rules of Civil Procedure, to authorize the *ex parte* restraining order without first providing notice to Mr. Johnston. *See, e.g., TPI Corp. v. Wilson*, No. E2007-02315-COA-R3-CV, 2008 WL 3821077 at *4 (Tenn. Ct. App. Aug. 15, 2008) (concluding that the defendant's due process rights were adequately protected when the trial court issued a temporary restraining order in compliance with the requirements of Tenn. R. Civ. P. 65.03).

We note that in the *ex parte* order, the trial court set the date for hearing as March 7, 2012, thereby limiting the duration of the order to twenty days following entry of the order on February 16, 2012.[3] As this Court has noted, "a temporary restraining order issued without notice expires within fifteen days after its issuance unless the trial court extends it during that period. If a trial court decides to extend a temporary restraining order, it may do so for only fifteen additional days." *State ex rel. Dean*, 169 S.W.3d at 652 (citing Tenn. R. Civ. P. 65.03(5)); *see also* Tenn. R. Civ. P. 6 (explaining computation of time). In his motion to dissolve the *ex parte* restraining order, Mr. Johnston, then represented by counsel, did not object to the twenty-day duration of the *ex parte* order, and the expanded time period has not been raised as an issue on appeal. Review by this Court "generally will extend only to those issues presented for review." Tenn. R. App. P. 13(b). Moreover, as the time period for the *ex parte* restraining order was within the time allowed for an extension, we determine no reversible error in the initial duration of the order. *See State ex rel. Dean*, 169 S.W.3d at 652

---

[3]In 2012, there were twenty-nine days in the month of February.

(vacating the trial court's extension of an *ex parte* restraining order because it extended the order beyond the *thirty* total days allowed by Rule 65.03(5)).

## B.  Injunction Bond Required

Mr. Johnston also contends that the trial court erred by not requiring the Trustee to post a bond at the time of filing the sworn complaint, pursuant to Rule 65.05 of the Tennessee Rules of Civil Procedure.  Rule 65.05 provides:

> **65.05 Injunction Bond.** – (1) Except in such actions as may be brought on pauper's oath, no restraining order or temporary injunction shall be granted except upon the giving of a bond by the applicant, with surety in such sum as the court to whom the application is made deems proper, for the payment of such costs and damages as may be incurred or suffered by any person who is found to have been wrongfully restrained or enjoined.  The address of the surety shall be shown on the bond.
>
> (2)  A surety upon a bond under the provisions of this Rule submits himself to the jurisdiction of the court.  The surety's liability may be enforced on motion without the necessity of an independent action.  The motion shall be served on the surety as provided by Rule 5 at least twenty (20) days prior to the date of the hearing thereon.
>
> (3)  A party restrained or enjoined may move the court for additional security; and if it appear on such motion that the surety is insufficient or the amount of the bond is insufficient, the court may vacate the restraining order or temporary injunction unless within a reasonable time sufficient security is given.

The Trustee's original sworn petition does not include a posted bond.  In his motion to dissolve the *ex parte* restraining order, Mr. Johnston, through his former counsel, argued that due to the Trustee's failure to post a bond, the *ex parte* order was defective on its face.  The trial court, in its March 9, 2012 order, dissolved the *ex parte* restraining order and did not from that time forward enjoin Mr. Johnston from any action.  Mr. Johnston argued in his motion to dissolve or amend the March 9, 2012 order and in his subsequent "Motion to Enforce Liability of Surety and Motion to Dismiss" that the trial court erred in not requiring the Trustee to post a bond.  The trial court denied Mr. Johnston's motions in interim orders entered respectively on May 15, 2012, and December 18, 2012.  The court further explained in the December 2012 order:

The request to enforce the liability for surety is denied, and the court has already ruled upon the request before. No bond was required because no restraining order was ordered.

We agree with the trial court's ruling that no injunction bond was required for the March 9, 2012 order because the order did not enjoin Mr. Johnston from any action. Mr. Johnston had also been given notice and an opportunity to respond to the Trustee's petition at that point. We conclude, however, that the trial court erred by entering the *ex parte* restraining order without requiring the Trustee to post an injunction bond. *See* Tenn. R. Civ. P. 65.05. In addition to ordering SunTrust Bank to transfer the $80,000 to which the Trustee had claim under the joint account, the *ex parte* order enjoined Mr. Johnston from accessing the $80,000 or coming about the Decedent's Cleveland residence and required him to relinquish any of the Decedent's property in his possession to the Trustee.

Through his counsel, Mr. Johnston sought and was granted relief from the trial court's grant of extraordinary relief when the court dissolved the *ex parte* restraining order in its March 9, 2012 order. Subsequently acting without benefit of counsel, Mr. Johnston sought further relief by moving to enforce the liability of the Trustee. Mr. Johnston failed, however, to present proof of damages caused by the effect of the *ex parte* order. He argued in his motion, as he does on appeal, that his financial ruin was caused by SunTrust Bank's freezing of all his accounts at the time the *ex parte* restraining order was entered. The court did not order all of Mr. Johnston's accounts frozen at any time, however, and took specific action in the March 9, 2012 order to direct SunTrust Bank to release all of Mr. Johnston's funds remaining after transfer of the $80,000 at issue. We will address Mr. Johnston's claim of wrongful eviction in a later section of this opinion, but it is undisputed that he was not living at the Decedent's residence at the time the trial court entered the *ex parte* restraining order. The *ex parte* order did not, therefore, have the effect of causing Mr. Johnston to seek emergency housing. The record contains no indication that Mr. Johnston surrendered personal property to the Trustee in compliance with the *ex parte* restraining order, and the court dissolved this provision in the March 9, 2012 order.

Upon our thorough review of the record, we determine that Mr. Johnston failed to prove liability of the Trustee for damages incurred during the time period the *ex parte* restraining order was in effect. Further, the final disposition of the case was not affected by the injunctive provisions of the *ex parte* order. We therefore conclude that the trial court's error in entering the *ex parte* restraining order without requiring an injunction bond is not reversible error based upon the facts of this case.

V. Issues Arising from Order Directing Clerk and Master to Hold $80,000

Several of the issues raised by Mr. Johnston stem from his contention that the trial court erred by entering an order on March 9, 2012, directing, *inter alia*, the clerk and master to hold the $80,000 at issue in the registry of the court pending further orders. The Trustee contends that the trial court properly conducted an in-chambers hearing on March 7, 2012, with counsel for both parties present and that the court properly entered the resultant order on March 9, 2012. We conclude that the trial court did not err in entering the March 9, 2012 order and was acting within its authority in directing the $80,000 to be held by the clerk and master.

In its March 9, 2012 order, the trial court made the following findings of fact and reached the following conclusions of law in pertinent part:

The matter is before the Court on the ex-parte restraining order heretofore issued in this cause, the Motion to Dissolve the Restraining Order filed by [Mr. Johnston], and the Motion to Allow the [Trustee] to testify telephonically. Present for the hearing for this cause were counsel for the respective parties, the Defendant Charles Johnston, the availability of the [Trustee] and Mr. and Mrs. Reid Wright, witnesses for the [Trustee]. After having heard statements of counsel for the respective parties, it does appear that the facts necessary for the Court's ruling on the pending matters are essentially without dispute.

Based upon the initial ex-parte Order, SunTrust Bank has paid the sum of $80,000 into the Office of the Clerk and Master. The Defendant Charles Johnston has agreed that the said $80,000 may remain on interest in the Office of the Clerk and Master of this Court pending further hearings herein. It further appears that the reference to personal property in the trust attached to the original complaint is not available to the [Trustee] at this time and was not completed as attached to the alleged trust.

It further appears that [Mr. Johnston's] accounts have apparently been frozen and the same should be promptly released.

It also appears that assets of the trust are proposed for sale in the State of Florida and proposed for sale and may be, according to the knowledge of the parties before the Court, proposed for immediate sale in Bradley County, Tennessee. It also appears that [Mr. Johnston] alleges that the deceased may have been domiciled in the State of Tennessee at the time of her death.

After reviewing the file and having heard undisputed facts and the agreement of [Mr. Johnston], the Court thereupon announced its ORDER on the matters before the Court as follows:

-12-

1.  The $80,000.00 heretofore paid into the Office of the Clerk and Master shall continue to be held by the Clerk and Master at interest subject to further orders of the Court.

2.  The restraining order heretofore issued in this cause is dissolved and held for naught. Specifically, SunTrust Bank is hereby advised that the Ex Parte Order issued by the Court should not be further considered by SunTrust Bank in any way interfering with the rights of the Defendant Charles Glen Johnston a/k/a Charles Johnston to full complete control of accounts numbered [--------------------], [----------------------][4] or any other account in which the said Charles Johnston has any interest.

3.  The parties shall inventory the personal property in the residence property located at 810 [Steed] Street Northwest and/or videotape the same.

4.  The parties shall inventory and/or videotape those items of personal property held in storage in the name of Charles Johnston.

5.  The [Trustee] is hereby restrained and prohibited from selling, transferring, or conveying any interest in any property held by the [Trustee] in which [Mr. Johnston] has an interest.

6.  The Defendant Charles Johnston shall be given notice of any and all proposed sale of property in which he may have a direct or beneficial interest. Upon agreement of the said Charles Johnston to said sale in writing, the sale may proceed. Otherwise, the [Trustee] shall be given the right to immediate hearing on any proposed sale proposed to Charles Johnston to allow Charles Johnston to show cause, if any he may have, why said sale should not take place in the reasonable administration of the estate.

Mr. Johnston asserts the following to support his contention that the trial court erred in entering the above order and in subsequently denying his motions to vacate the order: (1) Mr. Johnston did not "consent" to have the clerk and master hold the $80,000 pending final judgment; (2) the Trustee was not personally present at the March 7, 2012 hearing; (3) the Trustee did not post an injunction bond; (4) Mr. Johnston's Fourth Amendment right preventing unlawful search and seizure was violated by the court's directive that the items in his storage unit be inventoried or videotaped; and (5) the trial court adopted an order drafted by counsel and with which Mr. Johnston did not agree. We will address each of these issues in turn.

---

[4]The account numbers specified by the trial court are those for the joint checking and savings accounts held in the names of the Decedent and Mr. Johnston. The specific numbers are omitted here for reasons of privacy and the protection of financial records.

## A. No Waiver of Issues Regarding Interim Orders

We first address a waiver argument proffered by the Trustee regarding Mr. Johnston's appeal as it applies to the March 9, 2012 order and other interim orders entered by the trial court in response to the parties' motions throughout the proceedings. The Trustee posits that because the trial court upheld the March 9, 2012 order in response to Mr. Johnston's multiple motions to amend or "dissolve" the order, any appeal of the March 9, 2012 order is untimely pursuant to Rule 4(b) of the Tennessee Rules of Appellate Procedure. Rule 4(b) provides, *inter alia*, that the time for appeal of a Rule 59.07 motion for new trial or a Rule 59.04 motion to alter or amend the judgment "shall run from the entry of the order denying a new trial or granting or denying any other such motion." The Trustee argues that Mr. Johnston's appeal as it pertains to orders entered prior to the final judgment in the action is untimely because his appeal to this Court was filed more than thirty days following entry of each order at issue. The Trustee further argues that Mr. Johnston's proper mode of review for the interim orders would have been to request permission for an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. We disagree.

This action was not ripe for appeal as of right until the final judgment was entered. *See* Tenn. R. App. P. 3(a) (stating in pertinent part that "any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties."). Rule 4(b) anticipates a party's filing of a motion for new trial or motion to alter or amend following final judgment. *See* Tenn. R. App. P. 4(b). Moreover, "[f]ailure to seek or obtain interlocutory review shall not limit the scope of review upon an appeal as of right from entry of the final judgment." Tenn. R. App. P. 9(a). The Trustee's waiver argument regarding interim orders is unavailing.

## B. Deposit to Abide with Clerk and Master

Mr. Johnston asserts that he never agreed to the provision of the order regarding the $80,000 and that the provision is therefore analogous to a contract that he never agreed to enter. Mr. Johnston first filed, without assistance of his counsel, a "Motion to Dissolve/Amend Order and Motion to Dissolve Restraining Order" on March 12, 2012, three days after the trial court had entered the order at issue. Mr. Johnston's former counsel, James Logan, filed a response to his client's motion on March 15, 2012, as well as a motion requesting permission to withdraw his representation after finding that Mr. Johnston had constructively discharged him. Attorney Logan stated in his response that he had discussed with Mr. Johnston the "agreement" to have the $80,000 remain with the clerk and master on the day of the hearing and believed unequivocally that Mr. Johnston had given consent to this part of the order.

-14-

It is well settled in Tennessee that a trial court cannot "enter a judgment based upon a settlement agreement when the court had prior notice that one of the parties was repudiating the agreement." *See Howard v. Howard*, 991 S.W.2d 251, 256 (Tenn. Ct. App. 1999) (citing *Harbour v. Brown*, 732 S.W.2d 598, 600 (Tenn. 1987)). Inasmuch as the March 9, 2012 order in no way purports to be a settlement agreement, we examine only the provision of the order to which the trial court noted Mr. Johnston's consent in relation to this issue. The record demonstrates that the first indication to the trial court that Mr. Johnston repudiated the consent given by his counsel to have the $80,000 held occurred on March 12, 2012, when Mr. Johnston filed his motion to dissolve the order. Thus, if Mr. Johnston's consent had been required for the trial court to order the $80,000 held, the order still would have been valid because the court did not have notice prior to the order's entry of Mr. Johnston's repudiation. *See Howard*, 991 S.W.2d at 256.

Moreover, having concluded that the trial court did not err in ordering the $80,000 transferred to the clerk and master from the Decedent's and Mr. Johnston's joint account upon the pleading of the Trustee, we further conclude that the trial court possessed authority to order the funds held without consent from Mr. Johnston. *See* Tenn. R. Civ. P. 67.02-03; *see, e.g., Inmon v. Hadley*, No. E2005-00834-COA0R3-CV, 2006 WL 2507188 (Tenn. Ct. App. Aug. 31, 2006) (concluding that once funds at issue in a dispute between lessor and lessee were deposited into the trial court pursuant to Tenn. R. Civ. P. 67.02 and 67.03, the court was "acting within its authority" when it ordered disbursement of the funds according to the final judgment.). The trial court did not err in ordering that the $80,000 in dispute would abide with the clerk and master pending final judgment.

C.  Trustee's Absence at March 7, 2012 Hearing

Mr. Johnston also argues that the trial court erred by not addressing the Trustee's absence at the March 7, 2012 hearing. At the time of the March 7, 2012 hearing, Mr. Johnston was represented by counsel. The Trustee previously had filed, with proper notice to Mr. Johnston through counsel, a motion to be available telephonically for the hearing rather than in person, citing his Florida residence and advanced age as reasons. Mr. Johnston, through his former counsel, did not file a response or objection to this motion. The Trustee maintains that the trial court never reached a decision regarding whether he could testify telephonically. We note, however, that the trial court did state in its order that the matter was before the court in part on the "availability" of Mr. Johnston, indicating that the court had accepted Mr. Johnston's telephonic availability and appearance of counsel in place of his personal appearance.

We conclude that Mr. Johnston waived his right to object to the trial court's grant of the Trustee's motion to testify telephonically when he did not object at the time of the

-15-

hearing. *See Waters v. Farr*, 291 S.W.3d 873, 918 (Tenn. 2009) ("One cardinal principle of appellate practice is that a party who fails to raise an issue in the trial court waives its right to raise that issue on appeal."); *see also* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Moreover, as the Trustee notes, Mr. Johnston has presented no proof that he was prejudiced by the Trustee's failure to appear personally at the March 7, 2012 hearing. This issue is without merit.

### D. Order to Inventory Personal Property in Storage

Mr. Johnston contends that the trial court violated his Fourth Amendment right to be free from unlawful search and seizure by ordering that the parties conduct an inventory of the personal property contained in his personal storage unit. This provision of the March 9, 2012 order was issued in response to the Trustee's allegation, along with a sworn affidavit of a cousin of the Decedent, that Mr. Johnston had removed items of the Decedent's personal property from her home and placed them in his storage unit. In a subsequent motion filed on March 22, 2012, the Trustee requested, *inter alia*, that the court enforce the order to inventory the items in storage. Following the hearing conducted on March 29, 2012, the trial court in its order entered April 13, 2012, ruled in pertinent part: "The parties shall arrange to inventory the personal property in the storage unit . . . with a deputy or constable present."

The record contains no inventory of the items in Mr. Johnston's storage unit. Mr. Johnston stated in his "Memorandum in Support of Motion to Dismiss and Provide Other Relief" that on March 20, 2012, the Trustee's counsel photographed the storage unit's contents in the presence of a constable. Mr. Johnston maintains in his brief on appeal that because he lost funds due to this action, he could not afford to keep his storage unit and much of his personal property. In its final judgment, the trial court found that the Trustee had failed to carry his burden of proof to show that any items of personal property rightfully belonging to the Decedent's Trust were held by Mr. Johnston. The court thereby dismissed the Trustee's claim for return of personal property in its final judgment entered February 13, 2013.

Mr. Johnston's Fourth Amendment argument is inapplicable to this issue. Both the Fourth Amendment of the United States Constitution and article I, section 7 of the Tennessee Constitution provide protection to citizens from unreasonable searches and seizures by government officials. *See State v. Moats*, 403 S.W.3d 170, 177 (Tenn. 2013) ("'[T]he most basic constitutional rule is that . . . 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated

exceptions.'"") (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971) (in turn quoting *Katz v. United States*, 389 U.S. 347, 357 (1967))).  The trial court's inventory order in this case was within the judicial process and did not order a search by a government official.

As the trial court noted in its order entered April 13, 2013, the Trustee was endowed by the Decedent's Trust with the "authority to manage and distribute the trust property."  In his role as personal representative of the Decedent's Estate, the Trustee was also appointed by the Florida probate court with the fiduciary duty of gathering, inventorying, and protecting the property belonging to the Estate.  *See* Fla. Stat. Ann. § 738.103 (Supp. 2012) (explicating general principles for fiduciary duties of trusts and estates administrators); *cf.* Tenn. Code Ann. § 35-50-110) (2007).  Given the Trustee's allegation in the original petition that Mr. Johnston had removed items of the Decedent's personal property from the Decedent's home, we determine that the trial court acted within its authority in ordering that an inventory of Mr. Johnston's storage unit be conducted by both parties.  *See, e.g., Browne v. Browne*, 547 S.W.2d 239, 241 (Tenn. 1977) (recognizing the county court's jurisdiction to decide whether property that appears to be part of the estate may in fact have been given to another person by the decedent); *In re Love's Estate*, 145 S.W.2d 778, 782-83 (Tenn. 1940) (recognizing the county court's authority over an estate administrator's inventory of the decedent's assets).  Mr. Johnston has failed to demonstrate any damages caused by the trial court's order for an inventory.  He is not entitled to relief on this issue.

### E.  Orders Drafted by Counsel

Mr. Johnston asserts that the trial court erred by requesting that the Trustee's counsel prepare orders memorializing the court's rulings.  He argues particularly that the trial court should have obtained his approval before entering two orders:  the December 18, 2012 order memorializing the court's ruling following a hearing conducted on November 8, 2012, and the final judgment entered on February 13, 2013.  The Trustee contends that the trial court properly followed local court rules when assigning counsel to prepare orders and properly declined to adopt an alternate draft of the December 18, 2012 order prepared by Mr. Johnston on his own initiative.  We find no reversible error in the trial court's adoption of orders prepared by the Trustee's counsel.

Rules 13.02 and 13.03 of the Local Rules of Court for the Circuit, Chancery and Criminal Courts for the Tenth Judicial District, in which the trial court is located, provide in pertinent part:

**13.02 Counsel Responsible for Preparation.**

Unless the court rules otherwise, counsel for the successful or proposing party shall prepare the proposed order reflecting the court's decision and shall submit it to opposing counsel not later than ten (10) days from the date of hearing or decision noting thereon the date of counsel's preparation.

**13.03 Action by Opposing Counsel and Court.**

Within ten (10) days of receipt of the proposed order, non-prevailing counsel shall either approve (and date the approval) and submit the order to the judge or chancellor for entry in accord with T.R.Civ.P. 58 or, if no order has been proposed by prevailing counsel, the non-prevailing counsel shall submit an order to opposing counsel and the court for approval. Once 10 days from hearing has passed and no agreed order has resulted from utilization of the procedures under this rule, either party may submit their proposed order to the court and the other party noting areas of disagreement and may initiate a telephone conference with all counsel and the court to resolve differences about the order.

Nothing in this rule shall limit the authority of the court to draw its own order or to enter an order submitted by a party in any case at any time the court is satisfied the order reflects the court's ruling and complies with Rule 58 of the Tennessee Rules of Civil Procedure.

The court upon receiving a proposed order from only one counsel may give opposing counsel five days to submit a competing order to the court.

In a recent decision of this Court, the issue of party-prepared orders was summarized succinctly as follows:

> The issue of party-prepared orders has been addressed recently by this court. *See Smith v. UHS of Lakeside, Inc.*, No. W2011-02405-COA-R3-CV, 2013 WL 210250, at *8-11 (Tenn. Ct. App. Jan. 18, 2013); *Beach Cmty. Bank v. Labry*, No. W2011-01583-COA-R3-CV, 2012 WL 2196174, at *5 (Tenn. Ct. App. June 15, 2012). In *Labry*, we observed that
>
> > after the adoption of the Tennessee Rules of Civil Procedure, the Supreme Court, in *Delevan-Delta Corp. v. Roberts*, 611 S.W.2d 51 (Tenn. 1981), recognized that "the thorough preparation of suggested findings and conclusions by able counsel can be of great assistance to the trial court." *Id.* at 52-53. Accordingly,

the Supreme Court held that "although it is improper for the trial court to require counsel to prepare findings, it is permissible and indeed sometimes desirable for the trial court to permit counsel for any party to submit proposed findings and conclusions." *Id.* at 53.

The decision in *Roberts* was discussed in detail by this Court in *Madden Phillips Const., Inc. v. GGAT Development Corp.*, 315 S.W.3d 800 (Tenn. Ct. App. 2009). According to this Court:

> The *Roberts* court offered guidance to lower courts when establishing findings of fact. The court maintained a clear preference for factual findings that are a product of the judge's own labor. *Id.* The *Roberts* court recognized, however, that other procedures sufficiently maintain the independence and impartiality of courts that adopt party-prepared findings. The court stated that trial judges may rely on party prepared findings, so long as they carefully review proposed findings to ensure that the findings reliably reflect the court's opinion based on the testimony and evidence produced at trial. *Id.* The court also recognized a need to ensure that the proposed findings dispose of all relevant issues. *Id.* The court advised trial courts to "ascertain that [party-prepared findings] adequately dispose of all material issues, and to assure that matters not a proper part of the determination have not been included. *Id.*

*Id.* at 810-11.

*Labry*, 2012 WL 2196174, at *5. Accordingly, party-prepared orders are allowable under the following circumstances: (1) the trial court does not require counsel to prepare the orders; (2) the trial court carefully reviews the orders to ensure that the conclusions reliably reflect the court's opinion; (3) the orders dispose of all relevant issues; and (4) no matters not a proper part of the determination are included. *Id.* (citing *Madden Phillips Const., Inc. v. GGAT Dev. Corp.*, 315 S.W.3d 800, 811 (Tenn. Ct. App. 2009)). *See also Airline Constr., Inc. v. Barr*, 807 S.W.2d 247, 253 (Tenn. Ct. App. 1990) (noting that the chancellor's opinion reproduced verbatim the proposed findings of defendant).

*Riad v. Erie Ins. Exch.*, No. E2013-00288-COA-R3-CV, 2013 WL 5874733 at *18 (Tenn. Ct. App. Oct. 31, 2013).

Mr. Johnston's argument that the court did not follow proper procedure appears to be based on his interpretation of the trial court's local rule 13.03, which provides for opposing counsel to submit an alternate proposed order if opposing counsel does not agree with the order drafted by prevailing counsel. As local rule 13.03 also provides, however, nothing in the rule limits the trial court's authority to "enter an order submitted by a party in any case at any time the court is satisfied the order reflects the court's ruling and complies with Rule 58 of the Tennessee Rules of Civil Procedure."

Upon our thorough review of the record, we find no indication that the orders entered by the trial court do not reflect the court's findings of fact and conclusions of law. In particular, the trial court's entered final judgment accurately reflects the Memorandum Opinion issued by the trial court from the bench. In contrast, the proposed order submitted by Mr. Johnston as an alternative to the December 18, 2012 order includes "rulings" outside the parameters of the proceedings, for instance, naming Mr. Johnston the Decedent's next of kin. We conclude that the trial court did not err in adopting party-prepared findings of fact and afford those findings the usual presumption of correctness. *See Madden Phillips Const., Inc. v. GGAT Dev. Corp.*, 315 S.W.3d 800, 811 (concluding that because there was no indication that the trial judge did not carefully review the party-prepared findings, this Court would afford those findings the "ordinary presumption of correctness").

## VI. Pre-Trial Motions

### A. Notice of Motion Hearing

Mr. Johnston also contends that the trial court erred by failing to find that the Trustee had intentionally withheld notice of the March 29, 2012 hearing. Counsel for the Trustee filed a "Motion to Approve Sale of Real Estate and for Other Relief" on March 22, 2012, and included a certificate of service stating that a copy of the motion and notice of hearing had been given to Mr. Johnston at the Bradley County Courthouse on the same day. On March 26, 2012, the Trustee's counsel filed a subsequent certificate of service regarding the same motion and hearing, stating that a copy of the motion and notice was "left at the last known address of the Defendant Charles Johnston," the Decedent's Cleveland residence, on March 22, 2012.

The Trustee's counsel explains in the responsive brief that she attached the "hand delivery" certificate of service to the motion because she had expected to see Mr. Johnston at court that day. When she did not find Mr. Johnston present, counsel for the Trustee

delivered the motion to the mailbox at the Decedent's home. Mr. Johnston maintains that the Trustee knew no one lived at the Decedent's residence in March 2012 and intentionally misdirected notice of the hearing. It does not appear, however, from Mr. Johnston's pleadings that he provided an alternate mailing address at which he could be given notice.

When the trial court questioned Mr. Johnston as to his mailing address during trial on January 14, 2013, the following exchange took place:

| | |
|---|---|
| THE COURT: | You just said I want my mail to go to 810 Steed Street and now you're telling me nobody lives there. |
| MR. JOHNSTON: | But I put in a change of address to go to a post office box. |
| THE COURT: | So where do you want it, Mr. Johnston? You said 810 Steed Street. |
| MR. JOHNSTON: | But there is a change of address in place for 810 Steed Street for Charles Johnston. |
| THE COURT: | Where do you want your mail to go? |
| MR. JOHNSTON: | 810 Steed Street. |
| THE COURT: | Okay. If the Court mails you anything, you want it to go to 810 Steed Street even though you're telling the Court today on the record and under oath that nobody lives there? |
| MR. JOHNSTON: | No, but I have a change of address in place to put it into a PO box. That's the only place – |
| THE COURT: | Okay. So you don't want to tell the Court your PO box so that we can mail it to you at your PO box? |
| MR. JOHNSTON: | You can, but I was hoping to get rid of that at some point. |
| THE COURT: | So 810 Steed Street. You're going to be charged with anything that goes to 810 Steed Street as having received it because you're telling the Court today that is your address? |
| MR. JOHNSTON: | Yes. I already got it. |
| THE COURT: | All right. And how long has that been your address? |
| MR. JOHNSTON: | Since I moved in with my aunt, two years. |
| THE COURT: | Two years. All right. |

Mr. Johnston does not dispute that he was present and was heard by the court at the hearing on March 29, 2012. Notice was clearly sufficient for Mr. Johnston to appear. If he believed that notice was insufficient for him to properly prepare for the hearing, Mr.

Johnston's remedy would have been to request a continuance at that time. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). The record contains no indication that Mr. Johnston requested a continuance of the March 29, 2012 hearing or that Mr. Johnston's case was prejudiced by the notice provided. This issue is without merit.

### B. Dismissal of Misdirected Mail Claim for Lack of Jurisdiction

Mr. Johnston argues that the trial court erred by dismissing the portion of his counterclaim averring that the Trustee intentionally misdirected his mail. The Trustee posits that the trial court properly found it did not have jurisdiction over a claim involving violation of a federal postal regulation. We agree with the Trustee.

The Trustee does not dispute that in December 2011, he completed a change-of-address card and submitted it to the United States Postal Service ("USPS") with the request that mail addressed to "Mae Charlayne Johnston and Family" be forwarded to the Trustee. The Trustee asserts that it was not his intention to misdirect Mr. Johnston's mail. With his "Motion to Dismiss and for Other Relief," filed on April 5, 2012, Mr. Johnston attached several documents pertaining to the change-of-address card, including a police report he had filed concerning the matter and a USPS administrative decision denying a request from Mr. Johnston for the original change-of-address card and referring him to federal court if he wished to appeal the decision.

In its December 18, 2012 order, the trial court noted that it did not have jurisdiction over violations of USPS regulations. In its Memorandum Opinion, incorporated into the final judgment, the trial court found in pertinent part:

> The Court finds that there may have been a change of address card filed by Mr. [Francis] Johnston that inappropriately said and family and may have caused Mr. Chuck Johnston some inconvenience, but there has been no showing of any damage. Mr. Johnston filed in this case, but has not put on any proof.

We conclude that the trial court correctly found in its December 2012 order that it did not have jurisdiction over this element of Mr. Johnston's counterclaim. *See* 39 U.S.C.A. § 404(6) (2007) (enumerating among the USPS's specific powers, the power "to investigate postal offenses and civil matters relating to the Postal Service."). Mr. Johnston is not entitled to relief on this issue.

-22-

C.  Denial of Subpoenas without Payment of Costs

Mr. Johnston claims that the trial court erred by denying his request for issuance of subpoenas for the Decedent's medical records without payment of court fees.  He argues that because the court had accepted his affidavit of indigency, the court should not have required payment before issuing the subpoenas.  In its December 18, 2012 order, following a hearing conducted on November 8, 2012, the trial court sustained Mr. Johnston's motion for the Decedent's medical records by granting limited access to the records for the time period of December 7 through December 11, 2011.  The court also sustained Mr. Johnston's affidavit of indigency but advised he would need to pay the court fees for issuing subpoenas.  *See* Tenn. Code Ann. § 8-21-409(a)(1)(B) (Supp. 2011).

Meanwhile, at the request of the Trustee, a subpoena *duces tecum* was successfully issued to SkyRidge Medical Center for records spanning the time period allowed by the trial court's order.  Upon submission, SkyRidge's custodian of records certified the records' completeness and attached an affidavit in compliance with Tennessee Code Annotated §§ 24-7-119 (2000) and 68-11-406 (2013).  Inasmuch as the medical records sought by Mr. Johnston and allowed by the trial court's order were presented properly to the trial court, we determine this issue to be moot.

D.  Denial of Jury Trial Demand

Mr. Johnston next contends that the trial court violated his right to a jury trial by denying his demand therefor.  The trial court considered Mr. Johnston's jury demand during the December 18, 2012 hearing, determining it to be untimely pursuant to Rule 38 of the Tennessee Rules of Civil Procedure.  The ruling was memorialized by the court's written order entered February 8, 2013.  We agree with the trial court.

Rule 38.02 of the Tennessee Rules of Civil Procedure provides:

Any party may demand a trial by jury of any issue triable of right by jury by demanding the same in any pleading specified in Rule 7.01 or by endorsing the demand upon such pleading when it is filed, or by written demand filed with the clerk, with notice to all parties, within fifteen (15) days after service of the last pleading raising an issue of fact.

The pleadings specified by Rule 7.01 are as follows:

**7.01.  Pleadings.** – There shall be a complaint and an answer; and there shall be a reply to a counterclaim denominated as such; an answer to a cross-claim,

-23-

if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summonsed under the provisions of Rule 14; and there shall be a third-party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or to a third-party answer.

Tenn. R. Civ. P. 7.01. A party who fails to demand a jury trial as required by Rule 38 waives the right to a jury trial. Tenn. R. Civ. P. 38.05.

As noted above, we measure a *pro se* litigant's pleadings "by less stringent standards than those applied to pleadings prepared by lawyers." *See Stewart*, 368 S.W.3d at 462. Mr. Johnston began including the words "Jury Requested" on all of his motions on October 19, 2012. Mr. Johnston filed no further pleadings specified by Rule 7 after he filed his "Motion to Dismiss and for Other Relief," in which he originally pled what he later referred to as a cross-claim and the trial court treated as a counterclaim, on April 5, 2012. Mr. Johnston's multiple motions filed from that point forward were essentially applications to the court for orders, as described in Rule 7.02.[5] His notations of "jury requested" on these motions were therefore not timely pursuant to Rule 38.02. Mr. Johnston is not entitled to relief on this issue.

E. Denial of Motion for Judicial Notice

Mr. Johnston asserts that the trial court erred by failing to grant his "Motion for Judicial Notice, Judicial Notice of Adjudicative Facts, and Judicial Notice of Law of the Tennessee Rules of Evidence." In this motion, filed on January 4, 2013, Mr. Johnston repeated several of his earlier allegations against the Trustee and stated matters outside the scope of this action or the jurisdiction of the trial court. Mr. Johnston also requested that the trial court take judicial notice of specific rules of civil procedure and statutes. Following Mr. Johnston's explanation of the motion in his opening statement at trial, the court acknowledged that judicial notice of laws does not require a motion and stated that it would review the applicability of the rules and statutes cited. *See* Tenn. R. Evid. 202(a) (mandating judicial notice of the common law, constitutions and statutes, and all rules adopted by the United States Supreme Court and the Tennessee Supreme Court without any request by a

---

[5]Mr. Johnston filed a "Motion for Additional Parties to be Brought in," on October 19, 2012, in which he alleged legal malpractice against the Trustee's counsel and his own former counsel. He wrote "Jury Requested" on this motion, as he did on all motions he filed from that date forward. The trial court denied the motion in its order entered December 18, 2012. We do not construe Mr. Johnston's motion to add trial counsel as parties to be a third-party complaint under the provisions of Rule 14 of the Tennessee Rules of Civil Procedure. *See* Tenn. R. Civ. P. 14.01.

-24-

party required). The court properly denied the motion as to all conclusory statements regarding the facts of the action and all matters beyond the scope of the lawsuit. This issue is without merit.

F. Denial of Motion for Involuntary Dismissal

Mr. Johnston asserts that the trial court erred by failing to grant his motion for involuntary dismissal, filed pursuant to Rule 41.02(1) of the Tennessee Rules of Civil Procedure on January 4, 2013, ten days before the trial began. We conclude that the trial court did not err in denying Mr. Johnston's Rule 41.02(1) motion.

Rule 41.02(1) of the Tennessee Rules of Civil Procedure provides:

> **41.02. Involuntary Dismissal – Effect Thereof. –** (1) For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant.

We review a trial court's grant or denial of a Rule 41.02 motion under an abuse of discretion standard. *See Langlois v. Energy Automation Sys., Inc.*, 332 S.W.3d 353, 357 (Tenn. Ct. App. 2009); *Cohen v. Clarke*, No. M2012-02249-COA-R3-CV, 2014 WL 107967 at *4 (Tenn. Ct. App. Jan. 10, 2014). "The power to dismiss a party's claims is best exercised infrequently and only when the punishment fits the offense." *Langlois*, 332 S.W.3d at 557 (stating also: "Trial courts should exercise restraint when dismissing a party's claims because '[t]he interests of justice are best served when lawsuits are resolved on their merits after trial.'" (quoting *Orten v. Orten*, 185 S.W.3d 825, 836 (Tenn. Ct. App. 2005) (Lee, J., dissenting)).

As a preliminary matter at trial, the court considered Mr. Johnston's argument for involuntary dismissal and dismissed the motion after the following exchange:

THE COURT:      You said under 41.02 I need to dismiss this matter. Tell me why.

MR. JOHNSTON:   Because under 41.02, under one of the provisions, it says I can move this Court for an order dismissing this case if he fails to comply with any of the Rules of Civil Procedure in the State of Tennessee or it can be dismissed on refusing to obey an order of the Court or for failure to prosecute. Not all of the above, any of the above.

| | |
|---|---|
| THE COURT: | And which one of those are you relying on? |
| MR. JOHNSTON: | He has failed to comply with the Tennessee Rules of Civil Procedure. |
| THE COURT: | In what way? |
| MR. JOHNSTON: | The restraining order was never filed. The ex parte restraining order was granted. That's under 65.05 that must be filed in this court in order for that to be granted. It was never granted. I mean, the order was granted, but the complying with 65.05 was not. |
| | And [the Trustee's counsel] failed to provide proper notice of the hearing and that's a violation of Rules 501 and 502. I think it's a pretty big deal when she would also violate United States Code when it comes to mail fraud or, I'm sorry, postage unpaid on mail matter. |
| | The rule itself, I believe, states simply any – it can be dismissed on grounds of – for a plaintiff failing to prosecute or it can be dismissed on grounds that the plaintiff failed to comply with any of the Tennessee Rules of Civil Procedure or it can be dismissed on grounds that the plaintiff failed to abide by any order of this court. And there are several he did not comply with, as I've outlined in my motion. But just to a put a period on the end of a sentence, this motion to dismiss was never heard by this Court in contrast to what [the Trustee's counsel] would have you – |
| THE COURT: | You mean in the way that it's particularly couched at this time? |
| MR. JOHNSTON: | Okay. I can take that, yes. |
| THE COURT: | Because you have argued before to dismiss the case, but this time you're using a different argument under the Rule than you used previously. |
| MR. JOHNSTON: | Yes. I wanted to put this information in the original motion, but I didn't think it was necessary and I waited for an answer. So that's why I'm bringing it to you today. |
| THE COURT: | Okay. Anything else? |
| MR. JOHNSTON: | That's it for now. |

. . .

-26-

THE COURT:        Okay. Motion to dismiss denied. Anything else? Begin the case today.

MR. JOHNSTON:    I'm sorry?

THE COURT:        We're ready to begin the case today. You were represented by counsel on 3/7/12. Counsel agreed the $80,000 could remain in the clerk's office. There's been no proof put into this motion hearing or any other hearing otherwise. These motions have been argued before. Based on the additional allegations, if any, that you've made pursuant to TRCP 41, there is no restraining order in this case. No bond was necessary and your motion to dismiss for involuntary dismissal is denied.

Mr. Johnston again requested a Rule 41.02 dismissal at the close of all proof immediately before the trial court ruled in the Trustee's favor.

As the trial court noted in its ruling during trial, the issues Mr. Johnston raised to support his Rule 41.02(1) motion had been previously decided by the trial court. We have reviewed those issues within other sections of this opinion. Upon our thorough review of the record, we determine that Mr. Johnston failed to demonstrate any violations of the Rules of Civil Procedure that would warrant the sanction of involuntary dismissal. *See Langlois*, 332 S.W.3d at 357 ("Dismissal is normally appropriate only where there has been a 'clear record of delay or contumacious conduct.'") (quoting *Shahrdar v. Global Hous., Inc.*, 983 S.W.2d 230, 236 (Tenn. Ct. App. 1998)). The trial court did not abuse its discretion in denying Mr. Johnston's Rule 41.02(1) motion.

## VII. Forgery

Mr. Johnston contends that the trial court erred by finding clear and convincing evidence that the check dated December 9, 2011, for $80,000 was a forgery and no consent was attained. The Trustee contends that the trial court properly found clear and convincing evidence that the Decedent's signature on the check was a forgery. Upon a careful and comprehensive review of the record, we agree with the Trustee.

As relevant to this action, to forge a writing means to "[a]lter, make, complete, execute or authenticate any writing so that it purports" to "[b]e the act of another who did not authorize that act . . . ." *See* Tenn. Code Ann. § 39-14-114(a)(1)(A)(i) (2010); *see also Estate of Acuff v. O'Linger*, 56 S.W.3d 527, 529 (Tenn. Ct. App. 2001). Forgery must be proven by "clear, cogent and convincing" evidence for a trial court to set aside a written instrument. *See Estate of Acuff*, 56 S.W.3d at 556.

The trial court in its final judgment found, by clear and convincing evidence, that "the check dated December 9, 2011, for $80,000.00 is a forgery and that no consent was obtained, and in fact consent could not be obtained from Mae Charlayne Johnston as she was bed bound and nonresponsive at the time of the date on the check." In its Memorandum Opinion, issued from the bench and incorporated into the judgment, the trial court made the following specific findings of fact:

> Mae Charlayne Johnston was admitted to the hospital on 12/8/2011. She was unresponsive, not communicative and had no change in her condition until she died on December 11th, 2011. She was bed bound and nonresponsive.
>
> Exhibit 3 [the check] shows the date of the check of 12/9/11 while she was in the hospital and unconscious. There is no proof that it was written on 12/5/11 as stated by the defendant [Charles Johnston] in some of his argument, but no testimony. And while the defendant at times in this case says that – makes statements of – while the defendant says in times – at times as a witness in this case, he put no proof on that it was signed on 12/5/11. The document in this case speaks for itself. It says on its face it was written on 12/9/11 and based on the testimony I have, I find by clear and convincing evidence that this document was a forgery at the time and there was no consent and consent could not be obtained from Mae Charlayne Johnston for that document to come out to – of her trust account and go directly to Mr. Johnston. The Court orders the return of the $80,000 to the estate or the trust as that was denoted in this matter.

The check at issue was dated December 9, 2011, and was deposited by Mr. Johnston on that date. It was undisputed and medical records demonstrated that the Decedent was unresponsive from the time she was admitted to Skyridge on December 8, 2011, through her death on December 11, 2011. Such evidence establishes that it was impossible for the Decedent to have signed the check or given Mr. Johnston permission to sign for her on December 9, 2011. The Decedent's cousin testified that she visited the Decedent every day from December 8 through December 11, 2011, and that the Decedent was "frozen" and could not move or communicate. She reviewed the $80,000 check and stated that the signature did not match what she knew the Decedent's signature to be.

It is undisputed that previously on September 30, 2011, the Decedent executed a durable power of attorney, appointing Mr. Johnston as her attorney in fact, and that she had at some point added him as a joint account holder to her personal checking and savings accounts. The respective power of attorney, however, provided no authorization for the Trust account on which the $80,000 check was written. As the trial court noted, Mr. Johnston

made statements presenting his version of the facts during his opening and closing arguments. *See State v. Reid*, 164 S.W.3d 286, 343 (Tenn. 2005) (explaining that opening statements "'do not amount to stipulations and certainly are not a substitute for the pleadings or for the evidence.'" (quoting *Harris v. Baptist Mem'l Hosp.*, 574 S.W.2d 730, 732 (Tenn. 1978))); *Chiozza v. Chiozza*, 315 S.W.3d 482, 492 (Tenn. Ct. App. 2009) (noting that the transcript provided in the record included "only opening statements of Counsel [which is not considered evidence]"); *Riad*, 2013 WL 5874733 ("Opening statements are not evidence and cannot be characterized as such."); *Wilson v. Americare Sys. Inc.*, No. M2008-00419-COA-R3-CV, 2009 WL 890870 at *6 (Tenn. Ct. App. Mar. 31, 2009) ("Statements and arguments of counsel made during the course of a hearing are not evidence.").

During his opening statement at trial, Mr. Johnston offered the following explanation:

> So the check for $80,000 was signed on December 5th, not December 9th as they allege. I have put that date in. I wrote the check. She signed it and this was on the same day, November – I'm sorry, December 5th, that I actually had a meeting with Life Care as to how we were going to afford to pay for these services now because we were out of insurance and we were also out of – we were at a state – we were at a state and time in history where the insurance was coming to an end and any Medicaid was coming to an end.

Mr. Johnston did not testify under oath during the trial and presented no proof to support his description of how and when the check was written. From a thorough examination of the record before us, we conclude that the trial court did not err in finding clear and convincing evidence that the $80,000 check was a forgery.

VIII. Counterclaim

A. Damages

Mr. Johnston contends that the trial court erred by dismissing his counterclaim for damages. The trial court in its final judgment found that Mr. Johnston "did not carry his burden of proof as to his counter-complaint . . . ." We agree with the trial court.

Mr. Johnston's primary claim for damages was for the $80,000 held by the trial court to be awarded to him. This request is based on his assertion that the Trustee caused him financial ruin by petitioning the trial court to order the $80,000 removed from the joint savings account he held with the Decedent. Having determined that the trial court did not err in finding clear and convincing evidence that the $80,000 check was a forgery, we also

determine that the trial court did not err in awarding the $80,000 to the Trustee for return to the Trust.

Other compensatory damages requested by Mr. Johnston in his counterclaim included $48,000 as reimbursement for a year of caregiving to the Decedent, $4,000 in litigation costs, $2,900 for lost personal property, and punitive damages for his health and housing costs experienced because of lost funds. Mr. Johnston bases his claim in part on the fact that SunTrust Bank froze all of his accounts in response to the trial court's *ex parte* restraining order. The court did not order and the Trustee did not petition for all of Mr. Johnston's accounts to be frozen, however. Moreover, the trial court ordered SunTrust Bank to release all of Mr. Johnston's funds in its March 9, 2012 order. Mr. Johnston failed to present evidence that the Trustee was liable for any injury to Mr. Johnston. The trial court did not err in dismissing Mr. Johnston's counterclaim for damages.

### B. Wrongful Eviction

Mr. Johnston contends that the trial court erred by failing to find the Trustee liable for wrongful eviction, or unlawful ouster, pursuant to Tennessee Code Annotated §§ 66-28-502 and -504 (2004) of the Uniform Residential Landlord and Tenant Act ("URLTA").[6] The Trustee contends that the trial court properly dismissed Mr. Johnston's wrongful eviction claim with the remainder of his counterclaim because Mr. Johnston failed to carry his burden of proof to show that a wrongful eviction occurred. We agree with the Trustee.

Tennessee Code Annotated § 66-28-504 provides:

> If the landlord unlawfully removes or excludes the tenant from the premises or willfully diminishes services to the tenant by interrupting essential services as provided in the rental agreement to the tenant, the tenant may recover possession or terminate the rental agreement and, in either case, recover actual damages sustained by the tenant, and punitive damages when appropriate, plus

---

[6]According to the version of Tennessee Code Annotated § 66-28-102(a) governing at the time the instant action was commenced, the URLTA was applicable "only in counties having a population of more than sixty-eight thousand (68,000) according to the 1970 federal census or any subsequent federal census." The Tennessee General Assembly amended section 102(a) in 2012 to applicability for "counties having a population of more than seventy-five thousand (75,000), according to the 2010 federal census or any subsequent federal census." *See* Pub. Acts 2012, ch. 847, § 2. We take judicial notice for the purpose of applying URLTA to this action that according to the United States Census Bureau official website, the population of Bradley County as of the 2010 federal census was 98,863. *See Counts v. Bryan*, 182 S.W.3d 288, 293 (Tenn. Ct. App. 2005) (holding that pursuant to Rule 201 of the Tennessee Rules of Evidence, a court may take judicial notice of facts "capable of accurate and ready determination" in its own proceedings).

a reasonable attorney's fee. If the rental agreement is terminated under this section, the landlord shall return all prepaid rent and security deposits.

*See also* Tenn. Code Ann. § 66-28-502 (delineating the remedy available to a tenant deprived by a landlord of essential services).

The Trustee acknowledged at trial that he had stopped electrical and other services to the Decedent's Cleveland residence on December 27, 2011, nineteen days after the Decedent's death. Mr. Johnston argues that the cessation of services operated as a constructive eviction, forcing him to vacate the residence where he had lived for the preceding year with the Decedent. A family friend testified that at the Trustee's request, he changed the locks on the Decedent's residence in March 2012. It is undisputed that at the time of trial, Mr. Johnston had not lived in the Decedent's home since December 2011.

The trial court found in dismissing Mr. Johnston's counterclaim in its entirety that he had not presented any proof to support his claim. The Trust document presented by the Trustee demonstrated that the Decedent had executed a quitclaim deed, conveying her Cleveland residence to her Trust, on December 10, 2003. According to the Trust document, the Trustee became responsible for managing the residence upon the Decedent's death. Mr. Johnston offered no proof at trial that he had entered into a rental agreement with either the Decedent or the Trustee and thus failed to demonstrate that he was a tenant entitled to protection under the URLTA. *See* Tenn. Code Ann. §66-28-104(15) (Supp. 2013) ("Tenant means a person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others; . . . ."). The trial court did not err in dismissing Mr. Johnston's claim for wrongful eviction.

## IX. Attorney's Lien

Mr. Johnston asserts that the trial court erred by placing a lien for $3,260 in attorney's fees due his former counsel, Mr. Logan, upon Mr. Johnston's share of the $80,000 held by the clerk and master on behalf of the Estate. We disagree.

Pursuant to Tennessee Code Annotated § 23-2-102 (2009), "[a]ttorneys and solicitors of record who begin a suit shall have a lien upon the plaintiff's or complainant's right of action from the date of the filing of the suit." Two types of attorney's liens exist in Tennessee either by common law or by statute. *Starks v. Browning*, 20 S.W.3d 645, 650 (Tenn. Ct. App. 1999). A retaining lien is a possessory lien "that permits a lawyer to retain a client's books, papers, securities, or money coming into his or her possession during the course of the representation until the attorney and client have settled their fee dispute or until the client has otherwise posted appropriate security for the outstanding fee." *Id.* A charging

lien, at issue in the instant action, "is based on a lawyer's equitable right to have the fees and costs due for the lawyer's services in a particular action secured by the judgment or recovery in that action." *See id.*

Generally, after an attorney's lien has been declared, the attorney must commence a separate action to enforce his or her contractual right to a fee. *Starks*, 20 S.W.3d at 653. An exception applies, however, "to cases in which the money or property upon which the lien is to be enforced comes within the control of the court in the case in which the services were rendered." *Id.* (explaining that "[w]hen the court is able to exert jurisdiction directly over the funds or property, the attorney need not resort to a separate suit to enforce his or her lien."). As this Court explained in *Starks*:

> The courts may decline to enforce an attorney's fee contract only (1) when the attorney did not negotiate the contract in good faith, *see Alexander v. Inman*, 974 S.W.2d [689,] 693-94 [(Tenn. 1998)], (2) when the contract provides for an unreasonable fee, *see White v. McBride*, 937 S.W.2d 796, 800-01 (Tenn. 1996), or (3) when the attorney has otherwise breached his or her fiduciary obligations to the client and this breach has prejudiced the client's interests. *See Crawford v. Logan*, 656 S.W.2d [360,] 365 [(Tenn. 1983)]; *Alexander v. Inman*, 903 S.W.2d 686, 694 (Tenn. Code Ann. 1995); *Coleman v. Moody*, 52 Tenn. App. 138, 155, 372 S.W.2d 306, 311-314 (1963).

*Id.* at 650.

Attorney Logan filed a "Motion to Withdraw and Impose a Lien" on March 15, 2012, three days after Mr. Johnston filed his first *pro se* motion. The trial court granted the attorney's lien following a hearing conducted on March 22, 2012, at which Mr. Johnston failed to appear. Mr. Logan filed with his motion a copy of the representation agreement, which provided for an attorney's lien in an instance of nonpayment, and itemization of outstanding fees due. In its resultant May 15, 2012 order, the trial court made the following findings of fact in pertinent part:

> From the record in this cause, it appears that good, lawful and sufficient reasons exist to allow James F. Logan, Jr. and the law firm of Logan-Thompson, P.C. to withdraw from further representation of the Defendant Charles Glen "Chuck" Johnston. It further appears appropriate and proper for said law firm to be granted their contractual lien upon the funds of Charles Glen "Chuck" Johnston for payment of their attorneys' fees. The Court having reviewed the billings incident to the representation of the Defendant finds that the fees sought in the amount of $3,260.00 are fair, reasonable and appropriate.

Mr. Johnston failed to appear at the hearing on Mr. Logan's motion to withdraw and impose a lien.[7] He at no time presented evidence to negate the representation agreement or the itemized charges. Mr. Johnston argues that Mr. Logan breached his fiduciary duty by agreeing on Mr. Johnston's behalf to have the trial court hold the $80,000 in dispute. Mr. Logan disputed this assertion in his sworn response to the trial court, stating that he had discussed the matter in depth with Mr. Johnston and that Mr. Johnston consented to have the $80,000 held by the court. *See White v. McBride*, 937 S.W.2d 796, 802 (Tenn. 1996) ("The attorney is an officer of the courts in which he is a practitioner, and courts jealously hold him to the utmost good faith in the discharge of his duty."). Moreover, as noted above, the trial court acted within its authority to order the $80,000 held by the court clerk without consent from Mr. Johnston. *See* Tenn. R. Civ. P. 67.02-.03. We determine that the trial court did not err by imposing the attorney's lien or in finding Mr. Logan's fees to be reasonable. *See* Tenn. Sup. Ct. R. 8, RPC 1.5.

In addition to imposing the attorney's lien, the trial court ordered respective payment from Mr. Johnston's portion of the $80,000 at issue. In its final judgment, entered February 13, 2013, the trial court directed in pertinent part:

> The Clerk and Master shall release the funds held in this cause by the registry of the court to Francis L. Johnston as Personal Representative for the Mae Charlayne Johnston Estate, less the lien which was previously imposed against the portion of Charles Johnston's portion of the funds held by the Clerk and Master, pursuant to the prior order entered *nunc pro tunc* on March 22, 2012 in the amount of $3,260.00 together with accrued interest to the date of payment thereof[.]

The trial court subsequently entered an Order of Clarification, directing the clerk and master to "distribute the lien of $3,260.00 to attorney James Logan, Jr. and the balance of $80,000.00 to Francis L. Johnston as the Personal Representative of the Mae Charlayne Johnston estate."

---

[7]Attorney Logan's motion included a certificate of service stating that he had mailed the motion to Mr. Johnston at the Steed Street residence, which was Mr. Johnston's last known address, on March 15, 2012. Mr. Johnston states in his brief on appeal that he did not receive the motion until the day of the hearing, March 22, 2012. As noted in an earlier section of this opinion, Mr. Johnston did not provide the trial court with an updated mailing address and in fact requested at trial that the court continue to send mail to the Steed Street address.

Having concluded that the trial court properly ordered the $80,000 at issue held pending final disposition of this action, we also conclude that the court properly exerted jurisdiction over the $80,000. The court did not err, therefore, in ordering that the attorney's lien be paid from Mr. Johnston's share of the funds held pending final disposition. *See Starks*, 20 S.W.3d at 653.

## X. Clerk and Master's Receipts

Mr. Johnston asserts that the trial court erred by allowing the clerk and master to include two receipts in the court file for the $80,000 held in the instant action, one with the origin designated as SunTrust Bank and the other with the origin marked as "F.L. Johnston" (the Trustee). Mr. Johnston attempted to raise this issue with the trial court at the beginning of the second day of trial, and the court informed him that he would need to call the clerk and master as a witness regarding an internal process of the clerk's office if he wished to pursue the matter. The issue was not raised again at trial. We are therefore unable to review any action of the trial court in relation to the receipts at issue. *See Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976) ("This is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are presented *and decided* in the trial courts . . . .") (emphasis added). We note that it was undisputed throughout this action that the $80,000 was transferred from SunTrust Bank to the clerk and master upon order of the trial court.

## XI. Post-Judgment Facts

Mr. Johnston has filed two motions, pursuant to Rule 14 of the Tennessee Rules of Appellate Procedure,[8] asking this Court to consider the post-judgment facts that (1) SunTrust Bank closed Mr. Johnston's last remaining account at that institution due to lack of funds and (2) he has incurred additional losses of personal property due to financial need. We find that these facts do not affect the position of the parties or the subject matter of the action; therefore, we deny consideration of these post-judgment facts. See Tenn. R. App. P. 14 (a); *see, e.g., Town of Dandridge v. Patterson*, 827 S.W.2d 797, 802 (Tenn. Ct. App. 1991).

## XII. Conclusion

---

[8]Mr. Johnston states that he is filing these motions pursuant to Rules 22 and 24 of the Tennessee Rules of Appellate Procedure. As the motions are requests for this Court to consider post-judgment facts, however, we are treating them as Rule 14 motions. *See Stewart*, 368 S.W.3d at 462 (noting that we measure a *pro se* litigant's pleadings "by less stringent standards than those applied to pleadings prepared by lawyers.").

For the reasons stated above, the judgment of the trial court is affirmed in all respects. Costs on appeal are taxed to the appellant, Charles Glen Johnston. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below.

_____

THOMAS R. FRIERSON, II, JUDGE